IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| ALEX ADALBERTO AGUILAR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | 1:26-cv-00588 (AJT/WBP) |
| MARKWAYNE MULLIN,[1] *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER**

Before the Court is Alex Adalberto Aguilar's ("Petitioner") Petition for Writ of Habeas

Corpus, [Doc. No. 1] (the "Petition"), seeking release from Immigration and Customs Enforcement

("ICE") custody and arguing that (1) his ongoing detention is unlawfully indefinite in violation of

the Immigration and Nationality Act, 8 U.S.C. §1231 and his fifth amendment substantive due

process rights (Counts I-III); (2) that his prior Order of Release on Supervision was improperly

revoked in violation of governing ICE regulations, which likewise violates his due process rights

(Count IV); and (3) that the procedures surrounding his potential third-country removal to Mexico,

including his potential denial of Immigration Judge review of a negative fear determination are in

violation of ICE regulations and therefore unconstitutional (Counts V-VI).[2] Upon consideration of

---

[1] The Acting Secretary of Homeland Security has automatically replaced his predecessor under Federal Rule of Civil Procedure 25(d).

[2] Regarding Counts V and VI, Petitioner appears to acknowledge that while he has requested a Reasonable Fear Interview ("RFI") regarding his purported fear of persecution in Mexico, he has not received either an RFI or a negative reasonable fear determination. [Petition] ¶ 82 ("Petitioner has stated a fear of removal to Mexico and has requested a RFI as to that country"). Accordingly, as the Court has previously ruled where no reasonable fear determination has taken place, this claim is unripe and should be dismissed. *See Sanchez Perez v. Perry, et al.*, 1:26-cv-0593-AJT-LRV (E.D. Va. Mar. 26, 2026).

1

the Petition, the memoranda in support thereof and in opposition thereto [Doc. Nos. 3, 5], and for the reasons stated herein, the Petition is **GRANTED**.

## I.    BACKGROUND

Petitioner is a 41-year-old native and citizen of Honduras. [Petition] ¶ 12; [Doc. No. 3-2] ¶ 5. He alleges that he first entered the United States in or about 1998 and has resided in Virginia since that time. [Petition] ¶ 13. On February 6, 2018, the Department of Homeland Security ("DHS") issued a Final Administrative Removal Order, finding Petitioner removable under INA § 237(a)(2)(A)(iii) based on a conviction classified as an aggravated felony. *Id*. ¶ 14. On March 30, 2018, after an asylum officer determined that Petitioner had established a reasonable fear of persecution in Honduras, DHS referred his case to the Immigration Court for withholding-only proceedings, and Petitioner filed an Application for Asylum and for Withholding of Removal (Form I-589) to his native Honduras, which was granted by an Immigration Judge ("IJ") on August 31, 2018. *Id.* ¶ 15. Petitioner then remained in post-removal order detention under 8 U.S.C. § 1231 for approximately ninety-four (94) days before being released under an Order of Supervision ("OSUP") on December 3, 2018. *Id*. ¶ 16. Since that time, he has consistently complied with the terms of his OSUP and has incurred no further criminal history since his release. *Id*.

On February 26, 2026, Petitioner was arrested while attending a regularly scheduled check-in with DHS, and was eventually taken to the Caroline Detention Center, where he remains. *Id*. ¶¶ 17-18. Though he alleges in his petition that he was not provided with any written notice regarding the revocation of his OSUP (*Id*. ¶ 73), Respondents attached a copy of the notice to their Opposition. [Doc. No. 3-3].

## II.    LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody

in violation of the Constitution or laws or treaties of the United States.'" *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts and dispose of the matter as law and justice require." 28 U.S.C. § 2243. "[T]he heart of habeas corpus," the Supreme Court has noted, is to allow a detainee to "challeng[e] the fact or duration of his physical confinement," and to "seek[] immediate release or a speedier release from that confinement." *Preiswer v. Rodriguez*, 411 U.S. 475, 498 (1973).

8 U.S.C. §1231(a) requires the government to detain noncitizens during the "removal period," which is defined as the 90-day period during which "the Attorney General shall remove the alien from the United States." 8 U.S.C. §1231(a)(1)(A). That period commences upon one of three occasions: "(i) The date the order of removal becomes administratively final; (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. §1231(a)(1)(B). Detention after the end of the removal period is governed by 8 U.S.C. § 1231(a)(6), which states that inadmissible aliens "may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision."

In *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), the Supreme Court held that detention pursuant to Section 1231 is subject to an implied reasonableness standard whereby detention after six months of detention is presumptively unconstitutional and habeas relief is proper so long as the petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and the government does not rebut that showing with sufficient

evidence. *Id.*

### III.    DISCUSSION

Petitioner claims that his ongoing detention after the expiration of his removal period violates his fifth amendment due process rights and the INA, 8 U.S.C. § 1231(a)(6), as interpreted by *Zadvydas* (Counts I-III), and that his Order of Supervision was revoked without observance of proper and required formalities and in contravention of Respondents' earlier factual findings regarding the feasibility of his removal, in violation of 8 C.F.R. § 241.4(l) and his fifth amendment due process rights as interpreted by *Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (Count IV). He requests, *inter alia*, that the court: (1) enjoin Respondents from removing him to a third country without first providing him notice and offering him adequate opportunity to apply for protection as to that country, as well as any appeals therefrom; and (2) order his immediate release. [Doc. No. 1] at 22–23.

A) Jurisdiction under ongoing *D.V.D.* litigation

As an initial matter, Respondents submit that Petitioner's membership in the "*D.V.D.* class" should bar review of his claims. [Doc. No. 3] at 23–27 (citing *D.V.D. v. Department of Homeland Security,* 778 F. Supp. 3d 355, 2025 WL 1142968 (D. Mass. 2025)). In *D.V.D. v. U.S. Dep't of Homeland Sec.*, five noncitizens filed a class action for declaratory and injunctive relief against DHS and others for violating procedural due process by planning to remove noncitizens to a third country without first providing notice and an opportunity to apply for protection from removal to that country. 778 F. Supp. 3d 355 (D. Mass. 2025), On April 18, 2025, the District Court of Massachusetts granted the plaintiffs' class certification and a preliminary injunction, requiring DHS to comply with certain procedures before initiating removal to a third country. *Id.* at 393–94. The class consists of:

All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

*Id.* at 378. On June 23, 2025, the Supreme Court granted the Government's application to stay the preliminary injunction, which is currently on appeal before the First Circuit. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153, 222 L. Ed. 2d 1109 (2025).

*D.V.D* does not address the issue relevant to Petitioner's claim; namely, the propriety of detention under 8 U.S.C. § 1231 pending effectuation of removal. And multiple district courts, including courts in this District, have rejected arguments identical to that raised by Respondents on this basis. *See Zavvar v. Scott,* No. CV 25-2104-TDC, 2025 WL 2592543, at *3 (D. Md. Sept. 8, 2025). And given his ongoing detention and the revocation of his order of supervision, there are also compelling circumstances to consider Petitioner's claims under the due process clause and the INA that are substantively different than those at issue in *D.V.D.*, which largely focused on what procedural due process protections noncitizens subjected to a third-country removal are entitled to. *D.V.D.*, 778 F. Supp. 3d at 387–90. As other courts have concluded, "to dismiss Petitioner's claims for [] relief at this time would effectively preclude [Petitioner] from the relief he seeks entirely and potentially foreclose any relief that he could be entitled to as part of the *D.V.D.* class if he is removed before the class-wide claims are resolved." *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1008 (S.D. Tex. 2025); *Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2841886 (D. Md. Oct. 7, 2025). Nor does the Supreme Court's stay of the district court's preliminary injunction change this Court's disposition since, as other courts have observed, the Supreme Court has not offered any analysis of its stay, let alone opined on whether the stay was based on the merits or the procedural posture of the case. *Santamaria Orellana*,

5

2025 WL 2841886 at *11 ("[B]ased on the presently available guidance from the Supreme Court, there is an insufficient basis upon which to reach a conclusion on which aspects of D.V.D. the Supreme Court has rejected, whether they relate to the class certification, the due process claim, or otherwise."); *Nguyen v. Scott*, 796 F. Supp. 3d 703 (W.D. Wash. 2025) ("The Supreme Court did not decide *D.V.D.* on the merits, nor did it even necessarily rule on the class's likelihood of success on its due process and APA claims."). The Court therefore declines to dismiss Petitioner's claims on the grounds that he is a member of the class in the *D.V.D.* litigation.

B) Improper Revocation of Release under *Accardi*

Petitioner argues that Respondents' revocation of his OSUP and his resulting detention violated their own regulations, chiefly under 8 C.F.R. § 241.4(l), in several ways: (1) that following his re-arrest, he was not afforded an opportunity to contest any facts against him or respond in any way to the revocation, in violation of 8 C.F.R. § 241.4(l)(1); (2) that Respondents did not and cannot justify their revocation with changed circumstances rendering his removal foreseeable (due in part to their prior issuance of a work authorization which entails a factual finding of infeasibility); and (3) that his OSUP was revoked by an official who lacked authority to do so, in violation of 8 C.F.R. § 241.4(l)(2).[3] [Petition] ¶¶ 72-79; *see also Accardi*, 347 U.S. 260 (1954) (holding that federal agency violated habeas petitioner's due process rights by violating its own regulations).

---

[3] Petitioner also claims that Respondents detained him without issuing a written Notice of Revocation, as required by 8 C.F.R. § 241.4(l)(1). [Petition] ¶ 73. However, as noted above, Respondents attached the written notice to their Opposition. [Doc. No. 3-3].

Respondents do not contest the accuracy of any of these factual assertions, but merely contend that ICE did not violate its own regulations because those regulations grant ICE significant discretion in making such revocations. [Doc. No. 3] at 10 (*citing Tran v. Baker,* No.: 1:25-cv-01598-JRR 2025 WL 2085020, at *5 (D. Md. July 24, 2025)). Defendants acknowledge that courts including this one have granted *Accardi* relief to detained aliens where the Notice of Revocation lacked the requisite factual findings, was made by an official who lacked authority to do so, or had some other material deficiency under Section 241.4(l). *See Juarez Villatoro v. Noem*, 1:25-cv-2359, AJT-WEF [Doc. No. 18] (E.D. Va. Jan. 6, 2026)); *see also Maravilla Martinez v. Simon, et al.*, No. 1:25-cv-01856-AJT-WEF (E.D. Va. Feb. 20, 2026); *see also Roble*, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("Providing a notice that simply recites the language of the regulation does not satisfy the Government's obligation to provide the reasons why Petitioner's Order of Supervision was revoked") (cleaned up).  Respondents briefly note their disagreement with this position in order to preserve the issue for appeal. [Opp.] at 10 n.8. The Court accordingly concludes, as it has previously, that Petitioner has made the required showing of a due process violation under the *Accardi* doctrine based on the multiple deficiencies in connection with the revocation of his OSUP.

With respect to an appropriate remedy for this successful *Accardi* claim, *Accardi* stands for the proposition that an agency's actions in violation of its own regulations are invalid, and accordingly, relief under this type of claim should generally be the vacatur of the challenged agency action. As the challenged action here is revocation of an order of release, the corresponding appropriate relief is to order Petitioner's release, as multiple courts have done on analogous facts. *See, e.g. Santamaria Orellana*, 2025 WL 2444087, at *8 (granting habeas petition for revocation of order of supervision in violation of §241.4(l)); *see also McSweeney v.*

7

*Warden of Otay Mesa Det. Facility*, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376, at \*7 (S.D. Cal. Oct. 24, 2025) ("The Court's research indicates that every district court, except two, to consider the issue has determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered") (internal quotations omitted).

### C) Petitioner's *Zadvydas* claim (Counts I, II, and IV)

Petitioner argues that his detention is unlawfully indefinite because there is no reasonable probability of removal within the foreseeable future ([Petition] ¶¶ 58-71), and that he is therefore entitled to release based on *Zadvydas*. The parties do not dispute that Petitioner has not been detained for the full presumptively-constitutional six month period after his order of removal became administratively final. Given that Petitioner's *Accardi* claim disposes of this matter as described above, the Court need not consider his claim under *Zadvydas* at this time.

## IV.   CONCLUSION

As detailed above, Petitioner's Order of Release on Supervision was revoked without, *inter alia*, Respondents having made the requisite factual findings and without Petitioner having been afforded adequate notice or an informal interview regarding the changed circumstances purportedly justifying his re-detention, all in violation of his due process rights and *Accardi v. Shaughnessy*, 347 U.S. 260 (1954). His continued detention is therefore unconstitutional and the Court has jurisdiction under 28 U.S.C. § 2241 to address Petitioner's detention.[4]

For all the above reasons, the Petition is granted, and it is hereby

---

[4] *See Luna Quispe v. Crawford,* No. 1:25-CV-1471, 2025 WL 2783799, at \*2–3 (E.D. Va. Sept. 29, 2025) (concluding that neither 8 U.S.C. §§ 1252(b)(9) nor 1252(g) divests this Court of jurisdiction to review the legality of a habeas petitioner's detention),

**ORDERED** that U.S. Immigration and Customs Enforcement's February 22, 2026 revocations of release with respect to Petitioner be, and the same hereby is, **VACATED**; and it is further

**ORDERED** that Respondents shall release Petitioner from detention immediately and place him under his prior Order of Supervision; and it is further

**ORDERED** that Respondents are **ENJOINED** from re-detaining the Petitioner based on a revocation of his Order of Supervision without first complying in all respects with the applicable regulations concerning the revocation of his Order of Supervision, as identified herein, including stating in the Notice the specific factual basis for any claim of "change in circumstances," and if the stated change in circumstances relates to a significant likelihood of removal in the reasonably foreseeable future, the factual basis for that claimed change, including what efforts have been made to locate a country for removal, the name of the country to which Petitioner will be removed and the authorizations received from that country for that removal.

All other claims and forms of relief requested in the Petition are denied.

The Clerk is directed to send copies of this Order to all counsel of record, and to terminate the case.

Anthony J. Trenga
Senior United States District Judge

Alexandria, Virginia
April 29, 2026

9